JENNINGS v TAMAKER CORPORATION

1. PRODUCTS LIABILITY—FORESEEABLE INJURY—SAFETY DEVICES.

The foreseeability of an injury to the user of a machine may include consideration of the foreseeable nature of human inattentiveness in light of the tediousness of the machine's operation and the likely proximity of co-workers to divert the user's attention, and the question of whether a safety device could have feasibly been put on the machine by the manufacturer is a question for the jury.

2. PRODUCTS LIABILITY—FORESEEABLE INJURY—SAFETY DEVICES.

A manufacturer has a duty to provide goods which are rendered safe, where feasible, against the danger of foreseeable injuries.

3. PRODUCTS LIABILITY—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.

The plaintiff's contributory negligence was a question of fact for the jury in an action by the user of a cardboard baling machine against the manufacturer of the machine for injuries sustained by the user when the door of the machine closed on his left arm while he was operating it, where there was evidence that the plaintiff knew of an injury suffered by a co-worker when the door closed on the co-worker's arm, but also testimony in a deposition that plaintiff's attention was diverted from the operation of the machine by the request of a fellow employee for a cigaret when the accident happened.

## Appeal from Macomb, Edward J. Gallagher, J.

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability §§ 63–65, 68, 73.

[1–3] Manufacturer's or seller's duty as to product design as affecting his liability for product-caused injury, 76 ALR2d 91.

Liability of manufacturer or seller for injury caused by industrial, business, or farm machinery, tools, equipment or materials, 78 ALR2d 594.

[2] 63 Am Jur 2d, Products Liability §§ 25, 26.

[3] 57 Am Jur 2d, Negligence § 295.

63 Am Jur 2d, Products Liability § 70.

Submitted Division 2 May 11, 1972, at Lansing. (Docket No. 11684.) Decided July 31, 1972. Leave to appeal denied, 388 Mich 784.

Complaint by Sarah E. Jennings, next friend of James J. Jennings, a minor, and by Donald J. Jennings against Tamaker Corporation, Great Lakes Enterprises, Inc., and American Mutual Liability Insurance Company for negligence and breach of warranty. Summary judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Ronald R. Stempien (Harvey, Kruse & Westen, P. C.,* of counsel), for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper* (by *Ronald C. Winiemko),* for defendants.

Before: J. H. GILLIS, P. J., and T. M. BURNS and TARGONSKI,* JJ.

T. M. BURNS, J. Plaintiff was an employee of Chatham Food Market at Southgate in Wayne County during the early months of 1968. The food market owned a cardboard baling machine which it had purchased from defendant Great Lakes Enterprises, Inc., a distributing company for defendant Tamaker Corporation. It was the policy of the food market not to permit persons under the age of 18 to operate the baling machine. In January, 1968, plaintiff turned 18 and was thereafter permitted to operate the machine. In January, 1968, a fellow employee of plaintiff suffered an injury when the door of the baling machine closed upon his left arm while he was operating the machine. Plaintiff knew of the injury suffered by

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

his co-worker. Plaintiff operated the machine once or twice a week for periods of several hours and never recalled the machine malfunctioning.

The baling machine is normally loaded from the front with cardboard, and the operator stands off to the right corner of the machine while operating the lever controls with his right hand. On the morning of May 11, 1968, plaintiff was operating the baler in such a position. He had been working the machine for about 1-1/2 hours and had crated three full bales of cardboard. As plaintiff was closing the baler door with his right hand operating the lever, a co-worker approached from the right side of the machine and asked plaintiff for a cigaret. Plaintiff reached for cigarets located on a ledge on the machine with his right hand, while continuing to operate the door closing the lever with his right forearm. He then heard Helen Romano, another co-worker, scream that his left hand was in the machine. He glanced frantically at his left arm, seeing the baler door closing on it, and then reached for the lever which operated the door of the machine. He pushed the lever in and in so doing only succeeded in further closing the door on his arm. As a result of this accident, plaintiff's lower left arm was amputated. Plaintiff brought the present action alleging negligence and breach of warranty, including *inter alia,* that the machine was not safely designed and that adequate warnings had not been posted on the machine. Defendants moved for summary judgment. After consideration of deposition testimony, the trial court granted defendants' motion. From this decision of the trial court, plaintiffs appeal.

The trial court's decision was based predominantly on our Supreme Court's opinion in *Fisher v Johnson Milk Co, Inc,* 383 Mich 158 (1970). In

*Fisher,* defendant sold to plaintiff, a patent attorney, a wire carrier made to carry four half-gallon bottles of milk. Some time later plaintiff purchased four half-gallon bottles of milk from defendant, put them in the milk carrier and drove home. Upon arriving home, plaintiff got out of his car carrying the milk carrier. He then slipped on some ice and fell, causing the bottom of the carrier to strike the sidewalk and the bottles to break. When he extended his hand to break the fall, the palm landed on pieces of the broken bottles causing it to be severely cut. In ruling in defendant's favor on plaintiff's suit for negligence and breach of warranty, the Supreme Court cited with approval the following language from defendant's brief:

" 'A leading case on the subject is: *Campo v Scofield* (1950), 301 NY 468 (95 NE2d 802), in which the New York Court of Appeals affirmed the dismissal of plaintiff's complaint for failure to state a cause of action. The instrumentality involved was an "onion topping" machine. Plaintiff sought recovery for injuries sustained while operating the machine, alleging that the machine was inherently dangerous and negligently designed and manufactured in that defendant had failed to equip the machine with safeguards which would lessen the extent of the injuries which plaintiff suffered when his hands became caught in the rollers. The Court said:

" ' "If the manufacturer does everything necessary to make the machine function properly *for the purpose for which it is designed,* if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. Just as a manufacturer is under no obligation, in order to guard against injury resulting from deterioration, to furnish a machine that will not wear out * * * , so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. To illus-

trate, the manufacturer who makes properly and free of defects, an axe or a buzz saw or an airplane with an exposed propeller, is not to be held liable if one using the axe or buzz saw is cut by it, or if someone working around the airplane comes in contact with the propeller. In such cases, * * * the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered. *In other words, the manufacturer is under no duty to render a machine or other article 'more' safe—as long as the danger to be avoided is obvious and patent to all.*" (Emphasis added.) 95 NE2d 804.

" 'In *Stevens v Durbin-Dusco, Inc* (Mo, 1964), 337 SW2d 343, the Court, after stating that § 395 of the Restatement sets for the standard of duty, continued:

" ' "But the manufacturer is not liable as an insurer, and he is under no obligation to make the product accident proof or foolproof. *Stevens v Allis Chalmers Manufacturing Company* (1940), 151 Kan 638 (100 P2d 723, 726–727); *Campo v Scofield* (1950), 301 NY 468 (95 NE2d 802, 804); *Yaun v Allis Chalmers Manufacturing Company* (1948), 253 Wis 558 (34 NW2d 853, 858). Since practically any product, regardless of its type or design, is capable of producing injury when put to particular uses, 'a manufacturer has no duty so to design his product as to render it wholly incapable of producing injury * * * ', 1 Hursh, American Law of Products Liability, [Rules Regarding Duty as to Design] § 2:59, p 240. The manufacturer of a butcher knife, cleaver, or axe properly made and free of latent defects and concealed dangers, may not be held liable merely because someone was injured while using the product. Thus, a manufacturer is not liable to a man who while using an iron dumbbell drops it on his foot" (346–347).

" 'See also *Poore v Edgar Bros. Co.* (1939), 33 Cal App 6 (90 P2d 808).

" 'In *Nabkey v Jack Loeks Enterprises, Inc.* (1965), 376 Mich 397, the plaintiff was injured while jumping on a trampoline. She appeals from a directed verdict [for defendant]. The Court said, in affirming the trial court, on page 400:

" ' "Plaintiff fully understood the nature of the device.

She observed others using it. There was nothing an instructor could have said or done which was not readily apparent to her on which, under the circumstances, was not under her sole control. No instructor could remove the danger of becoming unbalanced. The trampoline was in good operating condition. It did exactly what it purported to do." ' "

In attempting to distinguish the present case from the *Fisher* case and the cases cited therein, plaintiff sets forth the following analysis in his brief:

"In support of its position, defendant cited cases dealing with a milk carrier, axes, knives, buzz saws, lawn mowers, airplanes, and a trampoline, all either specifically designed to function by violent means or apparently dangerous in their misuse. None of these cases dealt with the design of a machine capable of amputating the limb of a person while that person was operating the machine. The trial court applied the reasoning from these cases which generally hold that a manufacturer is not liable where the danger in either the use or misuse of its product is obvious to all. To apply that rule to cases involving machinery and to carry that reasoning to its logical conclusion, the manufacturer of a piece of machinery who designs it in such a manner as to expose all possible sources of personal injury to open view is to be rewarded by a pronouncement from the courts of this state that it can incur no liability to anybody injured by the operation of that machine, while the manufacturer who tries to design his product in such a manner as to provide reasonable safety for the persons who might be injured by the operation of the machine is to be held liable for his negligence. The anomaly of that result is surely apparent to the Court."

The distinction which plaintiff attempts to draw in making the above statement is, in our opinion, a viable one. When comparing the operating of defendant's machine to operating an airplane with

its propellers whirling, it is first apparent that no person need stand next to the whirling propellers of the airplane. An operator, however, must operate the machine manufactured by defendant standing with a dangling left arm in the vicinity of a closing door capable of amputating that arm. The operation of this machine also requires on occasion that the operator adjust cardboard pieces within the area of the closing door. Considering the foreseeable nature of human inattentiveness in light of the tediousness of this machine's operation and the likely proximity of co-workers, it is our opinion that the injury suffered by plaintiff herein was foreseeable. Therefore, the question of whether a safety device could have feasibly been put on the machine by the manufacturer is a question for the jury. In 1 Frumer & Friedman, Products Liability, § 7.02, p 117, the authors, commenting on the rule of *Campo v Scofield,* 301 NY 468; 95 NE2d 802 (1950), the case cited with approval in *Fisher, supra,* state:

"It is submitted that these cases are unsound insofar as they deny recovery, as a matter of law, irrespective of whether the plaintiff appreciated the danger. A peril or danger may be patent but still not appreciated. Moreover, a manufacturer should incur responsibility for foreseeable injuries caused by the dangers which were appreciated but momentarily forgotten, at least where it is feasible to install a safety device to eliminate the danger. Such questions should be decided by a jury, not by the court."

It is our opinion that the more desirable rule of law is that the manufacturer has a duty to provide goods which are rendered safe where feasible against the danger of foreseeable injuries. Therefore, the trial court's granting of a summary judgment in defendants' favor was error.

The trial court in arriving at its decision adopted the brief of defendants in its opinion. Part of that brief refers to plaintiff's contributory negligence. However, since the court did rule that there was no negligence or breach of warranty on the part of defendants, it is our opinion that the trial court never really reached the question of plaintiff's contributory negligence. In any event, it is our opinion that since part of the deposition testimony reveals that plaintiff's attention was diverted by the request of a fellow employee for a cigaret, it cannot be said without a trial on the merits that the plaintiff was guilty of contributory negligence as a matter of law.

The case is, therefore, reversed and remanded for a trial on the merits.

All concurred.