**Deborah LANDBERG and Stephen Landberg, Plaintiffs,**

v.

**RICOH INTERNATIONAL, A DIVISION OF RICOH CO., LTD., Defendant.**

Civ. A. No. 93–74336.

United States District Court,
E.D. Michigan,
Southern Division.

July 17, 1995.

Earl R. Jacobs and Robert F. James, Jacobs, James, Klarr & Somlyo, Southfield, MI, for plaintiff.

Edward J. Higgins and Dennis M. Day, Plunkett & Cooney, John A. Cothorn, Meganck & Cothorn, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This is a products liability action brought by plaintiff Deborah Landberg against defendant Ricoh International because of injuries she suffered while operating a photocopier manufactured by defendant. Before the court is defendant's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[1] For the reasons discussed below, the court will grant in part and deny in part defendant's motion.

### I. Background

In August 1991, plaintiff Deborah Landberg was employed by A.M. Bruning, a division of A.M. International ("Bruning"), as a field service technician. Bruning manufactures and markets all different types of office machines and equipment. As a field service technician, plaintiff installed, repaired, and maintained equipment sold by Bruning to ultimate users.

On August 19, 1991, plaintiff was installing and demonstrating a Bruning Model 9036 photocopier at a customer's place of business. The copier was manufactured by defendant and was to be distributed and serviced in the United States by Bruning pursuant to a 1987

---

**1.** Plaintiffs have also filed a motion for leave to file a sur-reply. Because it finds that a sur-reply is unnecessary, contrary to Local Rule 7.1 (E.D.Mich. Nov. 7, 1994), and unfair to defendant in this instance, the court will deny plaintiffs' motion.

agreement. While demonstrating the 400 pound desktop copier, plaintiff noticed that the copier was tipping and wobbly. After further examining the base of the copier, plaintiff noticed that one of the copier's legs was completely off the stand and another was not sitting level because it was sitting on the edge of an indent made in the stand for the copier leg. In order to correct the problem, plaintiff placed her hands underneath the copier. When she touched one of the two legs that she had observed, they both came off and the copier collapsed on her left hand. A bystander was able to lift the copier enough so that plaintiff could free her injured hand.

In October 1993, plaintiffs filed a complaint alleging three causes of action. Plaintiff Deborah Landberg is seeking damages based upon negligence and breach of express and implied warranties. In her negligence claim, Deborah Landberg alleges design defect, manufacturing defect, and a failure to warn. Her husband, Stephan Landberg, is seeking damages based upon loss of companionship and consortium. After defendant filed its motion for summary judgment, Deborah Landberg has withdrawn any claim arising from a breach of express warranty that she may have had.

In the instant motion, defendant is seeking summary judgment as to all claims. Defendant contends that it had no duty to warn because plaintiff's employer, Bruning, is a sophisticated user of photocopiers. Furthermore, defendant argues that any duty to warn and any claim based on defective design is foreclosed by the open and obvious danger doctrine. Similarly, any claim for breach of implied warranties would be barred under the same doctrine. Finally, defendant claims that plaintiff has failed to establish a *prima facie* case in support of her manufacturing defect claim.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly

probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 1991 WL 49687, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

### III. Analysis

#### A. Open and Obvious Danger

■ Under Michigan law, there is no duty to warn or protect against dangers obvious to all. *Fisher v. Johnson Milk Co., Inc.*, 383 Mich. 158, 160, 174 N.W.2d 752 (1970); *see Kirk v. Hanes Corp. of North Carolina*, 771 F.Supp. 856, 858 (E.D.Mich.1991) (*Fisher* states the applicable Michigan law governing open and obvious dangers in products liability cases), *aff'd*, 16 F.3d 705, 707 (6th Cir. 1994). The open and obvious danger rule is limited to cases involving the design of a simple product or tool. *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). In *Owens*, the court stated that "the obviousness of the risks that inhere in some simple tools or products is a factor contributing to the conclusion that such products are not unreasonably dangerous. The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries."

*Id.* at 425, 326 N.W.2d 372. Under this analysis, "'a manufacturer has no duty to warn of or protect against known or obvious dangers associated with the use of a simple tool.'" *Kirk*, 771 F.Supp. at 858 (quoting *Raines v. Colt Indus., Inc.*, 757 F.Supp. 819 (E.D.Mich.1991)).

■ In *Glittenberg v. Doughboy Recreational Indus., Inc.*, 441 Mich. 379, 385, 491 N.W.2d 208 (1992), the Michigan Supreme Court held that "a manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics that are readily apparent or visible upon casual inspection and reasonably expected to be recognized by the average user of ordinary intelligence." *See Kirk*, 16 F.3d at 710 (Michigan's open and obvious danger rule also applicable to design defect cases). In applying the open and obvious danger rule to a product alleged to have caused injury, defendant is relieved of its duty of care to plaintiff if (1) the defendant's product is a simple tool or product; and (2) the dangers of the product are readily apparent. *Kirk*, 771 F.Supp. at 858. This is an objective test and is not dependent on the subjective knowledge of the particular user.

■ In this instance, defendant contends that its photocopier is a simple product in terms of the danger of its legs coming off, thereby causing it to topple over.[2] Defendant claims that the complex copying mechanism within the copier is not at issue. Instead, the real question is whether it was obvious to all that the copier's threaded legs could become unscrewed, thus causing the copier to fall and crush a user's hand. Defendant analogizes this case to *Beaver v. Howard Miller Clock Co., Inc.*, 852 F.Supp. 631 (W.D.Mich.1994). In *Beaver*, the court found that a grandfather clock was a simple product because by its nature, being tall and thin, it presents an obvious danger of toppling over when lightly pushed because of the effects of gravity. *Id.* at 638–39. In the

---

2. Examples of items found to be simple tools or products by courts interpreting Michigan law include the following: hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes, trampolines, lighters, swimming pools, and pistols. *Raines v. Colt Indus., Inc.*, 757 F.Supp. 819, 825 (E.D.Mich.1991). *But see Coger v. Mackinaw Products Co.*, 48 Mich.App. 113, 210 N.W.2d 124 (1973) (mechanized log splitter is not a simple tool); *Jennings v. Tamaker Corp.*, 42 Mich.App. 310, 201 N.W.2d 654 (1972) (mechanical baling machine is not a simple product).

same way, defendant argues that the copier and its screw-in legs, used for leveling the device for proper operation, are not complex. In defendant's view, it is obvious to all that once the copier's legs have been unscrewed enough, it is liable to topple over. Under these circumstances, defendant is seeking judgment on plaintiffs' design defect and duty to warn claims.

The court finds, however, that reasonable minds could differ over whether the mechanism of the photocopier's threaded legs and the associated assembly on the underside of the copier is a simple product. *See Glittenberg*, 441 Mich. at 398–99, 491 N.W.2d 208 (jury question exists where reasonable minds can differ over the obviousness of a risk posed by a product); *see also Beaver*, 852 F.Supp. at 635 (same). In *Glittenberg*, the court defined a simple tool as a product in which "the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the ordinary user or consumer." *Glittenberg*, 441 Mich. at 392, 491 N.W.2d 208. In this instance, the court finds that a fact question exists as to whether the dangerous condition alleged here is commonly recognized and widely known. For example, the safety margin allowed by the screw-in legs is not fully apparent. By simple visual inspection, it could be argued that it is not obvious to a reasonable user how much "play" is left in the legs so as to allow further unscrewing for the purpose of leveling the device. The danger of a photocopier toppling over when enough force is applied may be obvious, but the danger of the legs of the device detaching from it so as to fully remove any support holding up the copier above a desktop is not so apparent.

Another consistent feature of a simple tool or product is that it is difficult, if not impossible, to make the device more safe for its intended use without interfering with the ability to perform the intended use. The very nature of a grandfather clock is to be tall and thin, thereby necessitating the inherent danger of toppling. Similarly, the nature of a knife is to be sharp, thus creating the inherent, and obvious, danger that a user can be cut. In each case, the dangerous charac-teristic cannot be removed without destroying the purpose for which the device is to be used.

In this case, however, plaintiff has suggested several ways in which the copier could be made more safe, but that would not prevent the copier, or its leg assembly, from performing its intended purpose. In particular, plaintiff has pointed to other desktop copiers that do not have leveling legs attached directly to their bases. Instead, these other copiers have wheels attached to the bottom of the copier stand that can hold the weight of the copier should the leveling legs be unscrewed or fall off. In addition, plaintiff points to the length of the screws on the legs of defendant's copier. Plaintiff contends that had the screws been longer or equal to the length of the balancer, then the danger of detachment would have been lessened and made more apparent. Furthermore, plaintiff alleges that the purpose of leveling the copier for proper operation would not be frustrated by any of her suggestions.

Under these circumstances, plaintiff has raised a material issue of fact as to whether the copier and leg assembly manufactured by defendant pose an unreasonable risk. The dangers associated with the leg assembly of a photocopier do not seem to equate to the dangers starkly presented by the use of guns, buzz saws, knives, propellers, or even swimming pools. As a result, the court will deny defendant's motion for summary judgment on the failure to warn and design defect claims based upon Michigan's open and obvious danger rule. In this instance, because the court is unable to conclude that no reasonable juror—in light of the relative obviousness of the danger posed to intended users by the copier's leg assembly—could find that the photocopier in this situation poses an unreasonable risk of harm, summary judgment is inappropriate. *See Kirk*, 16 F.3d at 709–10. Thus, the obviousness of the risk posed in this case is a question best left to the finder of fact.

### B. Sophisticated User

▮ A manufacturer who supplies a dangerous product to another through a third person has a duty to warn the ultimate user of the product's hazards if (1) the prod-

uct is defective or dangerous; (2) the manufacturer has no reason to believe the user will realize its defective or dangerous condition; and (3) the manufacturer cannot reasonably rely on the purchaser/employer to warn the ultimate users of the product of the dangers. *Newson v. Monsanto Co.*, 869 F.Supp. 1255, 1259 (E.D.Mich.1994); *Tasca v. GTE Products Corp.*, 175 Mich.App. 617, 622, 438 N.W.2d 625 (1988). Under these requirements, "a manufacturer does not have a duty to warn the ultimate user of a product's danger if the purchaser is a 'sophisticated user' of the product." *Newson*, 869 F.Supp. at 1259 (citing *Mascarenas v. Union Carbide Corp.*, 196 Mich.App. 240, 246–48, 492 N.W.2d 512 (1992)). The essence of the sophisticated user doctrine is that a manufacturer is not under a duty to warn an ultimate user when a purchaser/employer can reasonably be relied upon to provide warnings about a product's dangers to the ultimate user.

■ In this instance, defendant contends that Bruning is a sophisticated user who should have properly warned or instructed its employee, the plaintiff, about the dangers associated with the threaded legs of defendant's photocopier. Defendant bases its contention that Bruning is a sophisticated user on the fact that Bruning has been involved in the sale and manufacture of office machines since 1875. In addition, defendant cites Bruning's extensive and comprehensive training programs for its field service technicians who service the photocopier at issue and its experience in the field. On these grounds, defendant contends that it should be relieved of any duty to warn because it could reasonably rely upon Bruning to warn plaintiff about the copier's dangers.

The court finds, however, that the sophisticated user doctrine is not applicable to this case. A purchaser/employer is deemed a sophisticated user and knows or should know of a product's dangers where either (1) the manufacturer has provided an adequate explicit warning of such dangers; or (2) where information on the product's dangers is available in the public domain. *Newson*, 869 F.Supp. at 1260. Under this analysis, Bruning would be deemed a sophisticated user if

defendant had warned it about dangers associated with the photocopier's threaded legs or if such information was available in the public domain. However,

> if the purchaser/employer has not been warned of the product's dangers, either directly by the [manufacturer] or constructively by available literature in the public domain on the product's hazards, it is unreasonable, if not impossible, for a [manufacturer] to rely upon the employer to warn its employees of the product's dangers. *Id.*

In this instance, plaintiff has produced testimony indicating that Bruning had no knowledge, from defendant or otherwise, concerning any dangers associated with the threaded legs of defendant's photocopier. Plaintiff has shown that the danger complained of in this lawsuit was not addressed during any of the training sessions or in any of the manuals provided by defendant to Bruning. Furthermore, the court has already found that the danger in this case is not subject to the open and obvious danger doctrine and that there exists a factual question as to whether the danger was apparent. As a result, the court must find that Bruning cannot be considered a sophisticated user who could be relied upon by defendant to furnish its employees with adequate warnings.

### C. Manufacturing Defect

■ In its motion for summary judgment, defendant contends that plaintiff has failed to present sufficient evidence to support a *prima facie* case of defective manufacture. In alleging defective manufacture, the plaintiff must use, as her standard, the product in its intended condition. The alleged manufacturing flaw is to "be evaluated against the manufacturer's own production standards, as manifested by that manufacturer's other like products." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 683, 365 N.W.2d 176 (1984).

■ In this instance, plaintiff cites testimony indicating that the copier's two right-side legs were screwed all the way up to the base of the copier at the time that it was delivered from defendant. The copier's two left-side legs were the ones that detached at the time of the accident. Plaintiff has also

presented testimony that defendant customarily ships its copiers with all four legs set four millimeters from the base. The difference in the setting of the two right-side legs is the alleged manufacturing defect cited by plaintiff.

 The problem with plaintiff's response, however, is that she has failed to show that the cited condition is a defect that was a proximate cause of the accident and her injuries. Merely citing to a condition of the product that differs from manufacturing specifications is not enough to establish a *prima facie* case of a manufacturing defect. Instead, plaintiff must demonstrate that the cited condition caused or contributed to the risk to which plaintiff was exposed. In this instance, plaintiff has not shown that there was any connection between her accident and the product's condition as it may have differed from company specifications when it left the factory. In fact, during oral argument, plaintiff seems to concede that her main claims center on design defect and the duty to warn, rather than manufacturing defect. Under these circumstances, the court will grant defendant's motion for summary judgment on plaintiff's defective manufacturing claim and any associated claim for breach of implied warranty.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED plaintiffs' motion for leave to file a sur-reply is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part. Judgment shall be entered in favor of defendant on all of plaintiffs' claims related to defective manufacture.

SO ORDERED.