*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF GREGORY PRICE BURNETT.

---

KATIE JO WEIGANDT, Personal Representative of
the ESTATE OF GREGORY PRICE BURNETT,

      Appellee,

v

LORI JANE BURNETT and MATTHEW
RODRIGUEZ,

      Appellants.

FOR PUBLICATION
May 26, 2022
9:00 a.m.

No. 357500
Saginaw Probate Court
LC No. 21-140774-DE

---

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

In this land dispute, appellants appeal by right the probate court's order denying their motion for summary disposition under MCR 2.116(C)(8) and sua sponte granting summary disposition to appellee under MCR 2.116(I)(2). We reverse and remand.

## I. BACKGROUND

The material facts are not in dispute. Gregory Price Burnett (the decedent) was married to Constance M. Burnett. In 2003, the decedent received certain real property, but Constance's name was not listed on the deed. In 2006, the decedent transferred the property via quitclaim deed to himself and to appellants. Constance's name and signature were not listed on the deed. Constance died in 2018, and the decedent died in 2020.

Appellee filed the complaint to quiet title to the property and determine that plaintiff was the sole owner in fee simple absolute of the property free of any claims by defendants. The parties do not dispute that Constance acquired a dower interest in the property under MCL 558.1. Appellee claimed that, because Constance did not sign the 2006 deed or waive her dower rights in the property, the transfer was void under the Michigan statute of frauds, which requires that real

property transfers be in writing and contain the signatures of all interested parties. Appellee requested that the probate court rule that it owns the property in fee simple.

Appellants, in lieu of filing an answer, filed their motion for summary disposition under MCR 2.116(C)(8). They argued that the lack of Constance's signature did not void the transfer completely but merely clouded title on the property, because Constance had a mere dower interest, which was different from a regular ownership interest. Appellants cited *Zaher v Miotke*, 300 Mich App 132, 151; 832 NW2d 266 (2013), in which this Court held that the transfer of an easement without the transferor's wife's signature was not void under the statute of frauds. Appellee distinguished *Zaher* and pointed to other caselaw that, it contended, was more on point and dispositive. The probate court ultimately agreed with appellee and denied appellants' motion for summary disposition. Moreover, it sua sponte granted summary disposition to appellee under MCR 2.116(I)(2), ruling that the transfer was void under the statute of frauds.

## II. ANALYSIS

## A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted pursuant to MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Id*. The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted). In an action based on contract, "the contract attached to the pleading is considered part of the pleading," even for purposes of MCR 2.116(C)(8). *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). MCR 2.116(I)(2) provides that "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

## B. STATUTE OF FRAUDS

Appellants argue that the probate court erred by ruling that the transfer was void under the statute of frauds. Appellants contend that, because dower rights were involved, the absence of Constance's signature merely clouded the property's title. We agree.

Under Michigan's statute of frauds, MCL 566.106:

> No estate or interest in lands . . . nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning,

surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides that, if the statute of frauds is violated, the conveyance "shall be void." Under MCL 558.1, "[t]he widow of every deceased person, shall be entitled to dower, or the use during her natural life, of ⅓ part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof." MCL 558.30(1) abolished all dower rights. However, under MCL 558.30(2)(a), subsection (1) does not apply to "[a] widow's dower elected by a woman whose husband died before the effective date of the amendatory act that added this section." The effective date of this section is April 6, 2017. See 2016 PA 489. Therefore, if a husband died before April 6, 2017, a widow may exercise her dower rights. Otherwise, they are abolished and can no longer be exercised.

"When interpreting a statute, [this Court] must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as plainly written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018). This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted).

Appellee principally relies on two opinions from this Court, *Slater Mgt Corp v Nash*, 212 Mich App 30, 31-33; 536 NW2d 843 (1995), and *Berg-Powell Steel Co v Hartman Group, Inc*, 89 Mich App 423, 425-428; 280 NW2d 557 (1979). In *Slater*, this Court held that a husband's entry into a purchase agreement to transfer real property without his wife's signature made the title unmarketable under the statute of frauds and permitted the buyer to forgo the sale. "The agreement contemplated the conveyance of marketable title." *Id*. The transferee later decided not to proceed with the transfer, and the husband, through his corporation, brought suit to enforce specific performance of the agreement. *Id*. The transferee sought summary disposition based on the statute of frauds, which the trial court granted. *Id*.

This Court began by stating that "[a] husband may not bargain away his wife's dower interest." *Id*. at 32. This Court discussed *Berg-Powell*, 89 Mich App at 425-428, which "held that the statute of frauds requires both the seller and his wife with a dower interest to sign a purchase agreement in order to create a valid contract for the sale of land." *Id*. This Court held that *Berg-Powell* was dispositive:

> *Berg-Powell* is controlling here. Even assuming, but not deciding, that [the husband]'s signature in his corporate capacity was adequate to create a valid contract for the sale of property he held personally, his wife's signature was also required under the statute of frauds because she has a dower interest in the real estate. The absence of her signature made the purchase agreement plaintiff sought to enforce *ineffective to convey marketable title*. [*Slater Mgt Corp*, 212 Mich App at 32-33 (emphasis added).]

In *Zaher*, 300 Mich App at 151, the case that appellants primarily rely upon, this Court held that the transfer of an easement without the signature of the transferor's wife was not void under the statute of frauds. In doing so, this Court interpreted *Slater* to mean that transferring property without the transferor's wife's signature did not void the transaction but merely "clouded" the title, and this Court stated that *Berg-Powell* relied on distinguishable Michigan Supreme Court precedent and was "inconsistent" with *Slater*. *Zaher*, 300 Mich App at 144-155. In 2003, Gregory Hoover purchased two lots, lot 2 and lot 3, in his own name while married to Linda Hoover. *Id.* at 136. Linda Hoover acquired a dower interest in the lots. *Id.* Hoover later sold lot 3 to the plaintiff, Zaher, but retained lot 2 for himself and Linda. *Id.* Hoover later conveyed a written easement to Zaher, but Linda's signature and name were not in the writing. *Id.* Hoover and Linda eventually sold lot 2 to the defendant, Miotke, and, this time, both Hoover and Linda signed the warranty deed; moreover, Hoover and Linda later both signed another warranty deed for lot 3 transferring it to Zaher. *Id.* A dispute arose when Miotke took action that encroached on the area of Zaher's purported easement. *Id.* at 137.

Miotke contended that the easement was void under the statute of frauds because Linda did not sign it or waive her dower interest. *Id.* at 138. On the other hand, Zaher argued that the easement was not invalid but that this deficiency "merely cloud[ed] the title to that grant." *Id.* (quotation marks omitted; alteration in original). On appeal, this Court first held that, without Linda's signature, "the granted easement clearly violated the statute of frauds." *Id.* at 141. However, this did not end the analysis: "The question then becomes one of remedy: should the easement be nullified as void from its creation, or is Linda's inchoate dower interest a cloud on the property's title that evaporated when Linda joined the warranty deed transferring the property and waived her dower rights?" *Id.*

This Court discussed *Slater* and quoted its "ineffective to convey marketable title" language, reasoning that

> the purchaser could take title to the property, *but that interest would be subject to the seller's wife's inchoate dower interest* and, upon the seller's death, his wife would become entitled to a one-third interest in the property. Thus, the purchase agreement was not void, *but could transfer only a clouded title*. [*Id.* at 145 (quotation marks omitted; emphasis added).]

This Court next discussed *Berg-Powell* and concluded that it did not comport with *Slater*: "In a manner inconsistent with its later decision in *Slater*, the *Berg* Court held that the contract was nullified, not that the purchaser took the title clouded by the seller's wife's dower interest." *Id.* at 145. Although this Court stated that "*Berg* comports with Supreme Court decisions holding that a contract to transfer a fee interest in land is 'void' absent signatures from all *coowners* of the property," it distinguished a *dower* interest:

> However, an inchoate dower interest is merely a potential future interest. If a wife survives her husband and has not waived her dower interest, she will become entitled to a one-third interest in the property. This is not an ownership interest that prevents a current transfer to another. As noted, it is possible that the wife's interest will never become consummate and the purchaser's rights will never be affected. Property law is equitable at its core and voiding a contract because of a murky

-4-

potential interest can be unjust. In a manner consistent with this idea, our Supreme Court has held in many cases that the courts have the equitable power to enforce a conveyance even absent the participation of the seller's wife and have the power to value a dower interest's impact on the property. [*Id*. at 145-146 (emphasis added).]

This Court engaged in an extensive analysis of prior, older Supreme Court cases, see *id*. at 146-149, and it concluded that "[t]hese cases all stand for the proposition that the transfer of a property interest may stand despite a husband's failure to secure the release of his wife's inchoate dower rights. There is no support therefore for a holding that Zaher's easement across lot 2 was invalid from the outset." *Id*. at 149.

One of the prior Supreme Court cases discussed by the *Zaher* Court was *Tandy v Knox*, 313 Mich 147; 20 NW2d 844 (1945). In *Tandy*, the defendant had signed an agreement for the plaintiff to purchase certain real property that the defendant owned. *Id*. at 149-151. However, the defendant's wife, Mrs. Knox, did not sign this agreement. *Id*. at 151. The agreement called for a land contract to be subsequently executed, but this never happened due to a dispute between the parties over the amount of land to be conveyed. *Id*. The amount of land to be conveyed was the primary issue on appeal. See *id*. at 152-156. The plaintiff sought specific performance of the agreement. *Id*. at 151. One other issue on appeal was the amount of money that the trial court abated from the purchase price agreement; the trial court had "found that the present value of the inchoate dower interest of the wife was the sum of $1,000, and provided for the abatement of the purchase price in that amount." *Id*. at 153.

Our Supreme Court stated that "[b]ecause of the refusal of Mrs. Knox to join with her husband in the execution of a land contract, *such contract must be made subject to her inchoate right of dower*." *Id*. at 156 (emphasis added). The Court stated that "the trial court held that plaintiff, *if he elected to accept specific performance* in lieu of an accounting, was entitled to an abatement of the purchase price in an amount equal to the present value of the inchoate dower interest, such value being fixed at the sum of $1,000," which the Court determined was in keeping with prior Supreme Court precedent. *Id*. (emphasis added).

Moving on from its analysis of prior Michigan Supreme Court precedent, the *Zaher* Court also noted that it "has held that a wife may bar her dower interest through a later transfer, *thereby curing a defect in an earlier conveyance*." *Zaher*, 300 Mich App at 149 (emphasis added). Applying its extensive analysis to the case before it, the *Zaher* Court held that "the law dictates, and equity suggests, that Miotke cannot avoid Zaher's easement simply because Linda did not join Hoover's transfer of that interest." *Id*. at 150. This Court reasoned:

If Hoover still owned lot 2 and blocked Zaher's use of the joint driveway, Zaher could successfully file suit to enforce the easement. Hoover created the problem by failing to secure Linda's written consent at the time of the conveyance. To the extent that the easement may have reduced the value of lot 2, Hoover's estate could be required to *recompense Linda* in some way for the monetary effect on her dower interest, but only if Hoover predeceased Linda. *Ultimately, however, the inchoate dower rights would not nullify the easement. Linda's dower rights are an encumbrance on the property separate from the encumbrance from the easement. The two are not directly contrary and can coexist*. [*Id*. (emphasis added).]

-5-

Moreover, this Court further reasoned:

> But Hoover did transfer his ownership interest in lot 2 to Miotke with Linda's approval. Linda can no longer claim that the value of her dower interest was somehow affected by Zaher's easement; *she no longer has a dower interest. Because Linda extinguished her dower rights to lot 2 by joining Hoover's conveyance to Miotke, those rights no longer impair lot 2 or sit in competition with Zaher's easement.* Miotke might successfully challenge the easement on notice grounds, but Linda's extinct dower rights are not a defense available to him. [*Id.* (emphasis added).]

With this backdrop in mind, we now turn to the present case and hold that the probate court erred by granting summary disposition to appellee under MCR 2.116(I)(2). Constance received a mere dower interest in the property, not a co-ownership interest. Although Constance did not sign the transfer document, this did not render void the entire transfer. Under *Tandy*, *Slater*, and *Zaher*, the absence of Constance's signature merely clouded the property's title. Unlike *Slater*, in which the buyer wished to not proceed with the sale, in this case the buyer, i.e., appellants, did wish to proceed with the sale, similar to *Tandy*. They were free to do so and to take the property with the encumbrance. See also *Bartos v Czerwinski*, 323 Mich 87, 92; 34 NW2d 566 (1948) (emphasis added) (holding that a buyer "entitled to a 'marketable title' *may not be required to accept* a conveyance if the title is in such condition that he may be required to defend litigation challenging his possession and interest").

We agree with appellants that the reasoning in *Zaher* controls here. Moreover, we note that the decision in *Berg-Powell* is not controlling precedent, having been decided before November 1, 1990. MCR 7.215(J)(1). As for *Slater*, in addition to the overall analysis of that decision by *Zaher*, we particularly note its observation that "*Slater* held that a purchase agreement was 'ineffective to convey marketable title' absent the seller's wife's signature." *Zaher*, 300 Mich App at 144-145, quoting *Slater*, 212 Mich App at 33. But in the case before us, the decedent did not transfer the property by warranty deed in 2006. Rather, he transferred it by quitclaim deed. A warranty deed covenants that the grantor has marketable title. A quitclaim deed, on the other hand, does not warrant valid title and only conveys whatever interest the grantor might have. *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348-349; 820 NW2d 242 (2012); see also *Michigan Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 377-378; 699 NW2d 272 (2005). Thus, in *Slater*, absent the wife's signature, the seller could not meet his obligation to transfer marketable title and complete the sale unless the purchaser would accept a title clouded by the dower interest. *Zaher*, 300 Mich App at 145. By contrast, in the case before us, the decedent could transfer a clouded title by way of quitclaim deed because the deed only transferred whatever interest the decedent had in the property, presumably a fee simple encumbered by his wife's inchoate dower interest.

Furthermore, in order for dower rights to be exercised, the husband must die prior to April 6, 2017, see MCL 558.30(2)(a); but the decedent in the present case died in 2020. Therefore, Constance's dower rights were extinguished after April 6, 2017. Moreover, Constance predeceased the decedent, and her rights were extinguished before they could vest. Therefore, any defect in the property was subsequently cured by the extinguishment of Constance's dower interest.

The entirety of appellee's complaint rested on the premise that the transfer was void from the outset and that appellee held title to the property. This was not the case. The 2006 quitclaim deed validly transferred the property to the grantees, subject to Constance's dower interest. Accordingly, the probate court should have granted summary disposition in favor of appellants.

We reverse and remand for the probate court to enter an order granting summary disposition in favor of appellants. We do not retain jurisdiction. Appellants may tax costs.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly